UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James E. Pietrangelo, II,
    Plaintiff,
v.

Alvas Corporation, George
Alvanos, Christine
Alvanos, Evan Alvanos,
John Doe, City of
Burlington, Emmet Helrich,
Wade Labrecque, William
Sorrell,
    Defendants.

Civil Action No. 5:09-CV-68

## AMENDED
## OPINION AND ORDER RE: WILLIAM SORRELL'S MOTION FOR SUMMARY JUDGMENT
(Doc. 98)

This matter comes before the court on Defendant William Sorrell, Attorney General for the State of Vermont's motion for summary judgment. Attorney General Sorrell seeks dismissal of Plaintiff's challenge to the constitutionality of Vermont's "notice against trespass" statute set forth in 13 V.S.A. § 3705(a). Plaintiff James E. Pietrangelo opposes that motion. For the reasons set forth below, Attorney General Sorrell's motion for summary judgment is GRANTED.

**Factual Background**

For purposes of the current motion, the following facts are undisputed unless otherwise specified. On July 25, 2008, at approximately 3:45 p.m., Mr. Pietrangelo ordered a hot dog at the Pine Street Deli in Burlington. He alleges in his Complaint that the employee who prepared the hot dog "handled the food in an unsanitary manner. Dismayed and disgusted, Plaintiff paid for the hot dog – obtaining a receipt – and left without receiving his food." (Doc. 5 at 4.) After informing the Health Department of the

incident, Mr. Pietrangelo picketed outside the deli in order "to warn the public about the unsanitary food handling and to prompt Pine Street Deli to respect Health regulations." *Id.* at 5.

While Mr. Pietrangelo was picketing, a Burlington police officer issued him a "notice against trespass" prohibiting him from entering onto deli property. (Doc. 98-1 at 1.) Under Vermont law, a notice against trespass is a necessary predicate for a charge of unlawful trespass. *See* 13 V.S.A. § 3705(a). Pursuant to Section 3705(a):

> (a) A person shall be imprisoned for not more than three months or fined not more than $500.00, or both, if, without legal authority or the consent of the person in lawful possession, he enters or remains on any land or in any place as to which notice against trespass is given by:
>
> > (1) Actual communication by the person in lawful possession or his agent or by a law enforcement officer acting on behalf of such person or his agent; or
> >
> > (2) Signs or placards so designed and situated as to give reasonable notice.

*Id.* A notice against trespass need not be in writing provided that it unequivocally conveys the owner's request that a particular person not enter upon the owner's property. *See, e.g., State v. Turner*, 150 Vt. 72, 74-75 (1988).

Mr. Pietrangelo challenges the constitutionality of § 3705(a), arguing that it violates the due process, equal protection, search and seizure, and free speech provisions of the Federal and Vermont Constitutions. Specifically, he alleges that the statute carries a criminal stigma because "the very act itself of issuing a no-trespass notice resembles issuing a criminal citation or a traffic ticket." (Doc. 5 at 22.) He also claims that there is no process for protesting the issuance of a notice against trespass, and that there are no standards dictating when a law enforcement officer can issue such a notice. He complains that the power to issue a notice against trespass "allows a law enforcement officer to detain an individual and ask for and obtain his identity and personal

2

information . . . even though the individual has not committed or attempted to commit any crime . . . ," and that allowing police to hand out notices arbitrarily has the potential to inhibit free speech. *Id.* at 22-23.

The only material fact disputed by Mr. Pietrangelo for purposes of summary judgment is whether notices against trespass are treated by the Burlington Police Department as confidential documents. (Doc. 110-2 at 1.) For purposes of summary judgment, the court assumes that they are not.

## Conclusions of Law and Analysis

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1] In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247-50, 255; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the

---

[1] Mr. Pietrangelo originally filed this case in state court, and the Attorney General moved to dismiss the constitutional challenge while the case was pending there. The state court denied the motion to dismiss, citing the "liberal 'notice pleading' standard . . . ." (Doc. 32.) Mr. Pietrangelo now objects to this court addressing Attorney General Sorrell's motion for summary judgment, claiming that if the court grants the motion it "will be undoing the state court decision." (Doc. 110 at 1.) This claim is without merit.

The standard at summary judgment is "significantly different" from that applied by the state court at the motion to dismiss stage. *Gilmore v. University of Rochester*, 654 F. Supp. 2d 141, 148-49 (W.D.N.Y 2009). While a motion to dismiss, under Vermont law, can only be granted if it is "beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief," *Kaplan v. Morgan Stanley & Co., Inc.*, 2009 VT 78, ¶ 7 (citations and internal quotation marks omitted), a plaintiff facing a motion for summary judgment must set forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Accordingly, this court may both uphold the state court's determination at the motion to dismiss stage, and nonetheless review the Plaintiff's allegations, as well as other documents submitted by the parties, *not* for the purpose of determining whether there might be a viable claim under *some* set of facts, but for the purposes of deciding whether Attorney General Sorrell is entitled, on the existing record, to judgment as a matter of law. Fed. R. Civ. P. 56(c).

moving party meets this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). This evidence may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").[2]

## I. Facial and As-applied Challenges

Mr. Pietrangelo asserts that he is bringing both facial and as-applied challenges to the statute. (Doc. 5 at 22.) In a successful facial challenge to constitutionality, there must be "no set of circumstances . . . under which [the statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008). In an as-applied challenge, the question is whether application of the statute, "even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). As one commentator has noted, "[i]f a court holds a statute unconstitutional on its face, the state may not enforce it under any circumstances, unless an appropriate court narrows its application; in contrast, when a court holds a statute unconstitutional as applied to particular facts, the state may enforce the statute in different circumstances." Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 236 (1994).

## II. "Stigma Plus" Claim

Mr. Pietrangelo's first claim is that "the very act itself of issuing a no-trespass notice resembles issuing a criminal citation or a traffic ticket," and carries a "criminal

---

[2] Mr. Pietrangelo argues that the Attorney General's motion is defective because it relies on "conditional facts." (Doc. 110 at 2.) By "conditional facts," he is referring to the Attorney General's acceptance of most of the facts set forth in the Complaint, while reserving the right to dispute those allegations in the future. Contrary to Mr. Pietrangelo's contention, courts have generally held that facts accepted at summary judgment are not binding for purposes of trial. *See Dennison v. James*, 356 Fed. Appx. 68, 70 (9th Cir. 2009); *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948); *Aluisi v. Elliott Mfg. Co., Inc. Plan*, 2009 WL 565544, at *8 (E.D. Cal. March 5, 2009); *Wall v. Construction and General Laborers' Union*, 2006 WL 197353, at *7 n.4 (D. Conn. Jan. 24, 2006) (facts found under summary judgment standard are not binding on jury at trial). "Conditional" facts are thus permitted.

4

stigma" because, among other things, such notices "are often or sometimes listed in local newspapers under police blotters" and "recorded in police databases or criminal databases." *Id.* Consequently, he argues, "[a] no-trespass notice implies that the individual issued the notice did something or would do something wrong on the property concerned." *Id.*

Mr. Pietrangelo concedes that the constitutional nature of his claim "may be unclear" from his Complaint, but now asserts that he is bringing a "stigma-plus" claim under the Due Process Clause. (Doc. 117 at 6-7.) A stigma-plus claim requires a plaintiff to allege "(1) the utterance of a statement about [him] that is injurious to [his] reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state imposed burden . . . in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks omitted). To satisfy the stigma prong of a due process claim, Mr. Pietrangelo must show (1) that the statements complained of were false, (2) that they stigmatized him, and (3) that they were publicized. *Abramson v. Pataki*, 278 F.3d 93, 101-02 (2d Cir. 2002).

Here, with respect to the first part of the stigma test, there is no evidence of a false statement. A notice against trespass merely informs the recipient that he or she is not to enter onto certain private property. Indeed, the Vermont Supreme Court has stated that a notice against trespass has "no legal significance beyond acting as a necessary predicate to a criminal prosecution for trespass." *Maarawi v. Parenteau*, No. 2001-230, 2001 WL 36140136, at *1 (Vt. Dec. Term 2001) (unpublished). Under 13 V.S.A. § 3705(a), other forms of notice against trespass include "signs and placards" such as a "No Trespassing" sign posted by a landowner. An oral communication, provided it is unequivocal, will also suffice. *E.g. Turner*, 150 Vt. at 74-75. The presence or issuance of such warnings are not themselves indicators of criminal activity – past, present or future. Consequently, Mr. Pietrangelo "has not established a threshold requirement [for a stigma plus claim] – the existence of a reputation-tarnishing statement that is *false*." *Vega v. Lantz*, 596 F.3d 77, 82 (2d Cir. 2010) (emphasis in original) (citing *Codd v. Velger*, 429 U.S. 624, 627

5

(1977)).

Furthermore, Mr. Pietrangelo offers no evidence that the notice at issue in this case was publicized. Citing other cities in Vermont where trespass notices are either published in the local newspaper or entered into the police department's "criminal-record database," Mr. Pietrangelo argues that he should be entitled to discovery on this issue so that he may fully explore "how the records of notices are truly maintained by law enforcement across Vermont." (Doc. 110 at 1, 3-4.)

How notices of trespass are maintained "across Vermont" is not material, since in an as-applied challenge the inquiry is whether the statute was applied unconstitutionally *in this case*. *Field Day LLC*, 463 F.3d at 174; *see also United States v. Poluoizzi*, 2010 WL 1048192, at *5 (E.D.N.Y. March 23, 2010) ("In an as-applied challenge . . . [f]actual context and defendant's circumstances are critical."). In support of his argument, Mr. Pietrangelo refers the Court to the website of a newspaper in Williston, Vermont. (Doc. 110-2 at 1.) The general practices of a Williston newspaper, or even of other police departments, are irrelevant, and there is no need for discovery on this point. Even if the court assumes that the Burlington Police Department does not maintain notices against trespass in a confidential manner, there is no indication that the notice delivered to Mr. Pietrangelo was published in any way. Because Mr. Pietrangelo cannot show either a stigmatizing statement or publication, his as-applied challenge fails as a matter of law.

As to the facial challenge, the court finds that the statute can clearly be applied without stigma. First, as discussed above, the notice against trespass does not represent criminal activity; instead, it is merely a notice informing an individual that he or she is not welcome on certain private property. And second, nothing in the statute demands publication. The Attorney General's motion for summary judgment with regard to Mr. Pietrangelo's stigma plus claim, with respect to both the application of the statute and its facial constitutionality, is thus GRANTED. *See Walsh v. Suffolk County Police Dep't*, 341 Fed. Appx. 674, 675-76 (2d Cir. 2009) (affirming summary judgment on stigma plus claim where plaintiff failed to show publication and did not challenge "substantial truth"

6

of stigmatizing statements).

*III.    No Process For Contesting Notices Against Trespass*

Mr. Pietrangelo next claims that there is "no effective process under the statute by which an individual can contest or respond to an issued no-trespass notice." (Doc. 5 at 22.) In order to establish a due process violation, Mr. Pietrangelo must show that he had a "liberty . . . interest which has been interfered with by the State" and that "the procedures attendant upon that deprivation were [not] constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted); *see also Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). It is axiomatic that no person has a constitutional right to intrude upon the private property of another. *See generally Hudgens v. N.L.R.B.*, 424 U.S. 507, 513-17 (1976) (noting that First Amendment did not give plaintiffs right to enter private property to engage in expressive conduct). Consequently, once Mr. Pietrangelo was told that he was unwelcome, he had no liberty interest in entering onto deli property.

Mr. Pietrangelo acknowledges that he has no right to enter onto the private property of another. He argues that rather than a right to proceed onto land, the liberty in interest in question here was his right to speak and protest freely without being issued a notice by police. In his words, "[t]he statute is a license to harass and interfere with liberty." (Doc. 117 at 6.) This argument is at odds with the statutory scheme generally, and with the facts of this case. The statute pertains to criminal trespass, and makes notice a necessary predicate. As discussed above, there is no criminal stigma attached to receiving such a notice, and there was nothing "interfering" about a law enforcement officer issuing the notice while acting on behalf of the deli owners. 13 V.S.A. § 3705(a)(1). Indeed, there is no claim that Mr. Pietrangelo was prohibited from either speaking or picketing once the notice against trespass was issued.

Furthermore, as Attorney General Sorrell properly points out, it is not clear what sort of process would be due. There is no reason to require a hearing as a notice against trespass does not invite any sort of dispute about the facts. Property owners may bar

others from their properties without stating a reason or even having one, and a notice against trespass is simply one form of informing an individual that he or she is not welcome. In essence, there is nothing to protest, since the property owner, or an agent or police officer acting on the property owner's behalf under § 3705(a), has a clear right to restrict access. *See Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994) ("[T]he right to exclude others" is "'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'") (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979)). Accordingly, there is nothing either on the face of the statute, or in the matter that it was applied, that denied Mr. Pietrangelo a right to due process.

## IV. Lack of Standards

Mr. Pietrangelo also claims that § 3705(a)(1) is unconstitutional because "there are no standards under the statute for the issuance of a no-trespass notice, and law enforcement officers have total discretion as to if, how, when, why, and where a no-trespass notice is issued." (Doc. 5 at 22.) He refers to this as his "void for vagueness" claim. (Doc. 26 at 5.)

The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). As a matter of fundamental due process, "'[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (alteration in original) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).

The void for vagueness doctrine is inapplicable to the notice against trespass provision in § 3705(a) for several reasons. First, § 3705(a) is not a law that is "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *Giacco v. Pennsylvania*, 382 U.S. 399, 402-03 (1966). The statute clearly prohibits criminal trespass, and subjects people to warnings of various forms as a predicate to prosecution.

8

Second, the notice against trespass is not *enforcing* anything. *See Kolender*, 461 U.S. at 357 (doctrine protects against arbitrary and discriminatory enforcement); *Chicago v. Morales*, 527 U.S. 41, 64 (1999) (O'Connor, concurring). Instead, it merely gives notice, just as a sign or placard would, that the owner has forbidden entry onto his or her land. Because there is no uncertainty about the conduct being regulated, and since there is no enforcement taking place, due process does not require standards under a "void for vagueness" theory.

The Complaint also asserts that standards are necessary because an owner may have an improper motive, such as racial discrimination. In his Complaint, Mr. Pietrangelo presents the example of German tourists being issued a notice against trespass by a police officer simply because a property owner hates Germans. (Doc. 5 at 23.) In a later filing, he suggests that "[s]omeone who hates George Bush or Barack Obama could have a police no-trespass order issued against him, even though Bush/Obama does not live in Vermont . . . as long as the police officer is willing to issue the notice." (Doc. 26 at 5.) While these examples are, of course, offered to illustrate a point, they describe only "hypotheticals at the periphery of the [law's] scope, and need not be considered" for purposes of Mr. Pietrangelo's as-applied challenge. *Perez v. Hoblock*, 368 F.3d 166, 175 (2d Cir. 2004).

Furthermore, as the Attorney General points out, even if laws can be applied in unlawful, and even discriminatory, ways, these applications, without more, do not render the underlying statute unconstitutional. Instead, they may give rise to separate constitutional claims. *See, e.g., Maarawi*, 2001 WL 36140136, at *1 ("even if Maarawi were able to prove that defendants issued the notice against trespass for a discriminatory, malicious or other bad purpose, the notice itself is not an actionable wrong . . . ."). No amount of discovery could alter the court's analysis on this issue, and Mr. Pietrangelo's argument fails as a matter of law.

V.   *Equal Protection*

The Complaint makes reference to the Equal Protection Clause. (Doc. 5 at 22.)

9

An equal protection claim requires two elements: (1) that the plaintiff was treated differently than others similarly situated, and (2) that this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). A plaintiff need not necessarily show that he is a member of a particular protected group, so long as he alleges that he has been "treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In a prior ruling in this case, Judge Murtha concluded that Mr. Pietrangelo had failed to allege the elements of an equal protection claim against City of Burlington defendants:

> Pietrangelo has not set forth any facts about "others similarly situated." Nor has he alleged facts sufficient to state a claim of discriminatory intent . . . . In sum, Pietrangelo's Complaint offers no support for a claim that his treatment was "unequal" in any constitutionally cognizable sense of the word. This claim for relief is therefore DISMISSED.

*Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420, 437 (D. Vt. 2009). The same analysis applies with regard to Mr Pietrangelo's challenge to the trespass statute. Nowhere does he explain how he is being treated disparately compared to "others similarly situated," and there is no allegation in the Complaint to suggest that the notice against trespass was issued in violation of his equal protection rights. Mr. Pietrangelo makes passing reference to "discriminatory enforcement," (Doc. 117 at 2), but offers no facts to support a claim (1) that on its face the statute cannot be applied in an constitutional manner, or (2) that, as-applied in this case, the notice of trespass was issued selectively.

VI. *Collection of Personal Information*

Mr. Pietrangelo contends that "[t]he power to issue a no-trespass notice also allows a law enforcement officer to detain an individual and ask for and obtain his

identity and personal information . . . ." (Doc. 5 at 23.) The court construes this as a claim under the Fourth Amendment's protection from unlawful searches and seizures.

The notice against trespass provision in § 3705(a) does not specifically provide for either detention or questioning, although it implies that the police may need to record the name of the individual to whom the notice is given. The provision is not unlike service of process, where the process server must implicitly confirm the identity of the person being served. Merely obtaining personal information, however, does not violate the Fourth Amendment.

The Supreme Court has "'held repeatedly that mere police questioning does not constitute a seizure.'" *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual [and] ask to examine that individual's identification . . . ." *Bostick*, 501 U.S. at 434-35. "'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.'" *Id.* at 434 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)); *cf. Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (biographical information collected by police for record-keeping purposes not custodial interrogation under *Miranda*).

Mr. Pietrangelo focuses on the ability of the police to obtain personal information, record it, and pass it along to "to the property owner on whose behalf the notice was issued." (Doc. 5 at 23.) He claims that "[t]he potential for abuse by the police, particularly in regards to free speech, is real and substantial." *Id.* These allegations focus on First Amendment rights, and not the question of a Fourth Amendment seizure. To the extent that a Fourth Amendment issue is raised, the facts alleged – that police may stop and inquire about personal information – do not support a constitutional claim.

*VII. First Amendment Claim*

Finally, there is the matter of free speech and the allegedly "real and substantial" potential for abuse by police. *Id.* The existence of a "potential for abuse" in the

11

applications of the statute does not mean that the statute itself is unconstitutional. Again, any number of laws allow the police to obtain personal information. Although the potential for abuse is always present, sanctioning the collection of information does not render those laws unconstitutional.

Mr. Pietrangelo also suggests in his Complaint that a notice against trespass may be used as a tool to subdue free expression. Given that the notice is simply a warning, and not a sign of any form of criminal activity, this claim cannot succeed. There is no dispute that Mr. Pietrangelo could be denied access to deli property. Informing him of this fact did not, and indeed could not, inhibit his First Amendment right to stand outside the deli, on public property, and convey his discontent.

*VIII. Vermont Constitutional Claims*

In addition to his federal constitutional claims, Mr. Pietrangelo asserts that the trespass statute violates the Vermont Constitution. As the Vermont Supreme Court explained in *Pietrangelo v. AMI-Burlington, Inc.*, 2008 WL 3976503, at *2 (Vt. Aug. Term 2008), "the Vermont Constitution may afford greater protection to individual rights than do the provisions of the federal charter. It is, however, a litigant's burden to demonstrate why the Vermont Constitution is more restrictive than the United States Constitution." (Citations and internal quotations omitted).

In one of his summary judgment filings, Mr. Pietrangelo states in a footnote that the Vermont Constitution "is more expansive than the U.S. Constitution." (Doc. 117 at 1 n.1). However, he does not explain how, in the context of his current challenge, that statement applies. Moreover, the Vermont Supreme Court has held, albeit in an unpublished opinion, that in an action brought under the Vermont Constitution, "[p]roviding written notice [under § 3705(a)] to a person that the person is not permitted to enter a particular piece of property is not an actionable wrong for which damages may be sought." *Morse v. Sprague*, 2004 WL 5583289, at *1 (Vt. Jan. Term 2004) (unpublished). Because the court finds no violation of the United States Constitution, and since Mr. Pietrangelo has not explained why the result should be different under the

Vermont Constitution, his Vermont Constitutional claims are DISMISSED.

**Conclusion**

In sum, Mr. Pietrangelo's constitutional challenge, both facial and as-applied, fails as a matter of law. A notice against trespass is simply that – a notice. It does not signify criminal conduct, does not give rise to due process protections, and while, as with any law, there is a potential for abuse, nothing inherent in the statute or its application was unconstitutional. No amount of discovery would alter this conclusion.

Accordingly, Attorney General Sorrell's motion for summary judgment (Doc. 98) is GRANTED, and counts Eighteen and Nineteen of the Complaint are DISMISSED.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this _19th_ day of May, 2010.

Christina Reiss
United States District Judge