UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 DEC 14 AM 10: 58

BY_____
      DEPUTY CLERK

| | |
|---|---|
| James E. Pietrangelo, II,         ) | |
|     Plaintiff,         ) | |
|         ) | |
| v.         ) | Case No. 5:09-cv-68 |
|         ) | |
| Alvas Corporation, George Alvanos,         ) | |
| Christine Alvanos, Evan Alvanos,         ) | |
| John Doe, City of Burlington, Vermont,         ) | |
| Emmet B. Helrich, Wade Labrecque,         ) | |
| and William Sorrell,         ) | |
|     Defendants.         ) | |

## OPINION AND ORDER RE: ALVAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Docs. 146 and 170)

This matter comes before the court on a renewed motion for summary judgment submitted by Defendants Alvas Corp. d/b/a Pine Street Deli, ("Deli"), George Alvanos, Christine Alvanos, and Evan Alvanos (collectively "Alvas Defendants"). The Alvas Defendants are represented by Richard Wadhams, Jr., Esq. Plaintiff James Pietrangelo, an attorney, is representing himself. The motion is opposed.

**Factual Background**

On July 25, 2008, at approximately 3:45 p.m., Mr. Pietrangelo ordered a hot dog at the Pine Street Deli in Burlington, Vermont. He alleges in his Complaint that the employee who prepared the hot dog "handled the food in an unsanitary manner. Dismayed and disgusted, Plaintiff paid for the hot dog – obtaining a receipt – and left without receiving his food." (Doc. 5 at 4.) Mr. Pietrangelo then called the Vermont Department of Health to report the incident.

After notifying the Department of Health, Mr. Pietrangelo returned to the Deli and informed Evan Alvanos, son of Deli owners George and Christine Alvanos, that the hot dog had been handled in an unsanitary manner and that he had called the State. Evan

Alvanos allegedly responded in a hostile manner, including telling Mr. Pietrangelo to "shove the health regulations up his ass, and for the Health Department to shove them up theirs." (Doc. 5 at 5.)

Mr. Pietrangelo left the Deli again, and called to inform the Department of Health of Evan's response. He also called the Burlington Police Department to notify the police that he would be picketing the Deli "peaceably and on public property." (Doc. 45 at 2.) He then returned to the public sidewalk outside the Deli, equipped with a sign and a video camera. The sign stated that eating at the Deli could expose patrons to hepatitis and other hand-borne diseases. The purpose of the camera was to document the picketing. (*Id.*) Mr. Pietrangelo began picketing the Deli at approximately 5:30 p.m.

Around the time that Mr. Pietrangelo began picketing, a Burlington Police car arrived and parked in the Deli parking lot. The officer in the car, later identified as Defendant Wade Labrecque, spoke with Mr. Pietrangelo and "merely told [him] that he could not come onto Pine Street Deli property while picketing." (*Id.* at 3.) Mr. Pietrangelo responded that he would only be picketing on public property. (*Id.*) Before Officer Labrecque departed, Evan Alvanos came back outside and told Mr. Pietrangelo words to the effect of "best you leave." (Doc. 146-1 at 2.)

Approximately one hour after Mr. Pietrangelo began picketing, an unidentified male, named in the Complaint as "John Doe," approached him and spoke to him in a hostile manner. Mr. Pietrangelo describes the encounter as follows:

> At around 6:30 p.m., I noticed an unknown, adult male on foot, approaching me aggressively from the direction of the front of the Pine Street Deli. I had seen the male previously talking to one of the Defendant Alvanoses in a manner indicating they were friends and/or in a working relationship. The male had a hardened, muscular look to his body and hardened, violent look on his face. Due to the male's physical appearance and demeanor and his aggressive movement towards me, I immediately and reasonably feared for my safety and trained the video camera on the male to document what I believed was going to be the male's attack upon my person. I reasonably feared that the male was imminently going to do serious bodily injury to me.

2

> The male got in my face and positioned his body so close to and so squarely in front of my body that the male necessarily would touch my person, and did so thereafter at least three times, and the touching offended me and was unwanted. The male's touching was to cause me to leave the area. The male started aggressively and violently yelling at me. The male's actions were so aggressive that I had no time to retrieve my cell phone from my pocket and call 911, even though I feared for my safety. All that I could do was to try to reason with the male telling him to choose peaceful counter-speech versus hitting me to express his opposition to my picketing. I tried to walk away north on the sidewalk, which was the only place I could go because the Pine Street Deli parking lot was to the right and the street to the left. The sidewalk was my only avenue of disengagement. The male immediately and aggressively reestablished his position against my body, again preventing me from moving forward. The male continued his violent yelling . . . . I again tried to walk away from the male, this time by walking south on the sidewalk. The male again immediately and aggressively reestablished his position against my body, again preventing me from moving forward. The male continued his violent yelling. When I told the male that the male was wrongfully blocking my personal movement, the male stated to me to the effect that I was free to leave the area entirely, meaning that the male would at the very least continue the male's aggressive and violent and threatening actions and the male's unwanted touching of my person and invasion of my personal space and false imprisonment of my person unless I stopped picketing.

(Doc. 45 at 5-6.) Mr. Pietrangelo further attests that he was eventually able to access his cell phone and call 911 to report that he was "being accosted." (*Id.* at 6.) The dispatcher advised him to walk away, but Mr. Pietrangelo insisted that he could not because the man was blocking his movements. Burlington Police Lieutenant Emmett Helrich subsequently arrived at the scene, spoke with both men, and instructed John Doe to leave the area.

Mr. Pietrangelo did not picket at the Deli after that day, purportedly due to fear "for my safety and for the safety of the public." (*Id.* at 11.) Six days later, he commenced this case by filing a civil Complaint in Chittenden County Superior Court. The case was subsequently removed to this court.

3

## Procedural Background

The Complaint asserts nineteen causes of action, several of which have been dismissed. Specifically, the court has dismissed all constitutional claims, including Mr. Pietrangelo's facial and as-applied constitutional challenge to a portion of Vermont's trespass statute, and his claims of unconstitutional conduct by the police officers.

The remaining claims are state law claims, alleging assault, battery, false imprisonment, intentional infliction of emotional distress, and common law conspiracy.[1] Each is premised upon the allegation that the Alvas Defendants "instigated, solicited, procured, aided, abetted, and conspired with Defendant John Doe . . . ." (Doc. 5 at 15-16.)

The Alvas Defendants initially moved for summary judgment on December 19, 2008, prior to the commencement of any discovery. In support of their motion, they each submitted affidavits stating that John Doe was not a Deli employee, was not acting at their direction, and that they did not know his identity. Mr. Pietrangelo opposed the motion, arguing in part that he was entitled to discovery under Fed. R. Civ. P. 56(f). The court granted summary judgment on all claims except "any claims in which [the Alvas Defendants'] liability is based upon a connection to John Doe and his alleged conduct." (Doc. 95 at 41.) As to those claims, the court stated that "[t]he evidence presented by the plaintiff, minimal though it may be, indicates that [Mr. Pietrangelo] is entitled to engage in discovery before being required to challenge the Alvas Defendants' summary judgment motion." (*Id.*) The court issued its ruling on October 7, 2009, and discovery ensued.

In the course of discovery, and pursuant to a motion to compel, Mr. Pietrangelo produced a DVD containing videotaped images from the Deli incident. Among other

---

[1] After consulting with the parties, the court has determined that, given the length of time this case has been pending in federal court and the considerable motion practice undertaken by the parties here, it is appropriate to continue to exercise supplemental jurisdiction over the state law claims. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

4

things, the DVD depicts a man with red sunglasses addressing Mr. Pietrangelo. (Doc. 146-2 at 53:25.) It is undisputed that this is the individual identified in the Complaint as John Doe.

The Alvas Defendants have viewed the DVD in its entirety, and in support of their renewed motion for summary judgment have submitted affidavits stating that they do not have any information about the identity of John Doe aside from what is evidenced by the DVD. Their statement of undisputed facts specifically denies having any prior knowledge of John Doe, and states that they "did not – nor did any other agent or employee of the Alvas Corporation or Pine Street Deli – ask, request, instruct, encourage, and/or otherwise communicate with John Doe regarding any actions taken with respect to the Plaintiff." (Doc. 146-1 at 6.)

Mr. Pietrangelo disputes these claims, arguing that certain conduct by the Alvas Defendants on the day in question suggested a connection to John Doe. It is primarily on this basis – his belief that there is a link between the Alvas Defendants and John Doe – that Mr. Pietrangelo opposes the entry of summary judgment.

## Conclusions of Law and Analysis

I.   *Mr. Pietrangelo's Fed. R. Civ. P. 56(f) Request.*

In his opposition to summary judgment, Mr. Pietrangelo seeks additional time to conduct discovery with regard to an alleged connection between the Alvas Defendants and John Doe.

In order to prevail under Rule 56(f), the party opposing a motion for summary judgment must file an affidavit explaining: "1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.

1989). A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. *Paddington Partners*, 34 F.3d at 1138.

Mr. Pietrangelo's Rule 56(f) affidavit states that he needs to obtain a list of all of the Alvas Defendants' employees, servants, agents and friends, and to then "interrogatory/RFP/depose said employees/servants/agents and friends to determine John Doe's identity and relationship." (Doc. 150-3 at 2.) When Mr. Pietrangelo tried to obtain this information through interrogatories, he asked the Alvas Defendants to provide the legal names, addresses, and home telephone numbers of all of their male employees, servants, family members, friends and acquaintances as of July 25, 2008. (Doc. 125-1 at 3.) The discovery request was not limited to individuals who were likely to be present in Burlington at the time of the incident nor limited in any way to individuals of a similar age or appearance to John Doe. The Alvas Defendants objected to the discovery request as beyond the scope of discovery. In denying Mr. Pietrangelo's motion to compel, the court concluded that a list of names and contact information for all of the Alvas Defendants' male friends and acquaintances at a particular point in time was not reasonably calculated to accomplish the goal of identifying John Doe. Mr. Pietrangelo attempted no other form of discovery, did not seek to narrow the scope of his discovery, and did not depose any of the Alvas Defendants. Now that the Alvas Defendants have reviewed the videotape and denied any knowledge of, or direct contact with, John Doe, the court concludes that Mr. Pietrangelo's request for the names and contact information for every male they knew in July 2008 remains unreasonable.

To succeed under Rule 56(f), a party opposing summary judgment "must furnish enough information to convince the court that it is not engaged in a fishing expedition for claims that have no hope of being substantiated." *Four Star Capital Corp. v. NYNEX Corp.*, 183 F.R.D. 91, 99 (S.D.N.Y. 1997); *see also Paddington Partners*, 34 F.3d at 1138 (Rule 56(f) should not be used as a shield against summary judgment, nor does it "permit a plaintiff to engage in a 'fishing expedition.'"); *Contemporary Mission, Inc. v.*

6

*United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) ("Rule 56(f) cannot be relied upon to defeat a summary judgment motion 'where the result of a continuance to obtain further information would be wholly speculative.'") (citation omitted). As Mr. Pietrangelo has failed to make this showing, his request for additional discovery under Rule 56(f) is DENIED.

II.   *Alvas Defendants' Summary Judgment Motion.*

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247-50, 255; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). This evidence may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").[2]

---

[2] The Alvas Defendants' renewed motion for summary judgment was not accompanied by a notice to *pro se* litigant opposing motion for summary judgment. As Judge Murtha ruled with respect to a previous summary judgment motion in this case, "[g]iven that Pietrangelo is an attorney, has significant litigation experience in this Court, including experience with complex summary judgment filings (*see Pietrangelo v. AMI Burlington, Inc.*, File No. 2:05-CV-124) . . . the Court finds that this omission was harmless. *See Schafler v. Summer*, 63 F. App'x. 581, 584 (2d Cir. 2003) (not reported)." *Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420, 433 n.3 (D. Vt. 2009); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (noting that *pro se* attorneys are not entitled to the special considerations granted to other *pro se* parties).

7

In this case, Mr. Pietrangelo seeks to hold the Alvas Defendants responsible for the allegedly tortious actions of John Doe. The Alvas Defendants argue at summary judgment that there is no evidence linking them to John Doe, and affirmatively deny any such connection. Mr. Pietrangelo responds that he believes that there is a connection. Both parties claim that the DVD supports their position.

*III.    Summary Judgment as the Basis of the DVD*

The first question before the court is whether it is appropriate to view the DVD at summary judgment. The authenticity of the DVD is not in dispute, and both parties contend that the video footage supports their arguments. When rendering judgment as a matter of law, a court may credit video footage over a party's recollection of events. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the lower courts erred in adopting plaintiff's version of the facts when considering defendant's motion for summary judgment because a videotape in evidence directly contradicted the plaintiff's testimony); *see also Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007). The court will therefore accept, and has reviewed, the DVD as part of the summary judgment record.

The Alvas Defendants direct the court's attention to certain portions of the DVD, which depicts John Doe interacting with Mr. Pietrangelo. (Doc. 146-2 at 53:25.) This same portion of the DVD has audio of voices off-camera speaking to John Doe and referring to him as "John." (*Id.*) Mr. Pietrangelo can be heard saying: "This guy has several times touched my person and restricted my movement on the public sidewalk." (*Id.* at 54:40). The Alvas Defendants note that the video "does not capture any physical contact between Plaintiff and John Doe." (Doc. 146-1 at 4.)

The DVD also includes footage of John Doe explaining to police that he did not touch Mr. Pietrangelo: "I never touched him. Never have, never will." (Doc. 146-2 at 54:43.) A witness to the incident is recorded telling police that he did not see John Doe touch Mr. Pietrangelo aside from "accidental" foot contact. (*Id.* at 45:01.) Later in the DVD, the witness states that he saw no contact apart from accidental bumping of Mr. Pietrangelo's sign, and possibly his foot. (*Id.* at 51:57.)

At one point in the DVD, Mr. Pietrangelo questions the witness present during the Pietrangelo-John Doe encounter. The witness states that Mr. Pietrangelo and John Doe may have "bump[ed] into each other" (*id.* at 45:11) and that John Doe "got in [Mr. Pietrangelo's] face," (*id.* at 44:52) but that he "did not see him touch" Mr. Pietrangelo (*id.* at 44:57). After Mr. Pietrangelo asks this person if he is willing to be a witness, the person declines, stating "I kind of feel like this is a bullshit cause" (*id.* at 46:27) and that Mr. Pietrangelo was just "trying to get money out of [the Deli]." (*Id.* at 46:48.) Mr. Pietrangelo denies this motivation and asserts: "There's no liability from them. How would I get money from them?" (*id.* at 46:53).

The Alvas Defendants argue that the DVD does not display conduct by John Doe that would satisfy the elements of assault, battery, false imprisonment or intentional infliction of emotional distress. Mr. Pietrangelo responds that, notwithstanding his representations earlier in the case about the crucial nature of the video, the DVD does not capture his entire interaction with John Doe, and that unrecorded events – as described in Mr. Pietrangelo's previous affidavit – make up the factual bases for those claims. Mr. Pietrangelo also argues that the court should not credit statements by John Doe and the witness (primarily, their statements that there was no intentional physical contact) over his own sworn affidavit.

The court will not base its summary judgment ruling solely on the contents of the DVD, as it is clear from the recording that the entire episode was not captured on video. Because the DVD provides an incomplete record, and the Alvas Defendants have not addressed Mr. Pietrangelo's own account of the relevant events, the court cannot find that the Alvas Defendants are entitled to summary judgment solely on the basis of the DVD.

IV.   *Evidence of a Connection Between the Alvas Defendants and John Doe*

Each of Mr. Pietrangelo's remaining claims against the Alvas Defendants is premised upon the allegation that they had a relationship with, or at least communicated with, John Doe and thus allegedly had a duty to control his actions or assume liability for

9

any harm he caused to Mr. Pietrangelo.[3] These claims are governed by Vermont law. *See United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 437 (7th Cir. 1982) ("state law governs a state law claim (even in nondiversity cases)") (parenthetical in original) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)).

Vermont follows the *Restatement (Second) of Torts* § 315 (1965) ("§ 315") in determining whether there is a duty to control the actions of a third person. In *Peck v. Counseling Serv. of Addison Cnty., Inc.*, 146 Vt. 61, 499 A.2d 422 (1985), the court held that:

> Generally, there is no duty to control the conduct of another in order to protect a third person from harm. *Restatement (Second) of Torts* § 315 (1965). A recognized exception to this general rule arises in the situation "where there is . . . a special relationship between two persons which gives the one a definite control over the actions of the other . . . ." Harper & Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 895 (1934). An exception also arises where a special relationship exists which imposes a duty upon one to control the actions of another, *Restatement, supra*, § 315(a), or, where a special relationship gives a third person a right to protection. *Id.* at § 315(b).

*Peck*, 146 Vt. at 64-65, 499 A.2d at 425. The "existence [of a special relationship] is primarily a question of law." *Endres v. Endres*, 2008 VT 124, ¶ 11, 185 Vt. 63, 968 A.2d 366.

*Peck* does not specifically define what qualifies as a "special relationship" although it clearly identifies three instances in which such a relationship would give rise to a legal duty to control, warn and/or protect: (1) where the relationship "gives the one a definite control over the actions of the other[;]" (2) where the relationship imposes a "duty upon one to control the actions of another[;]" and (3) where the relationship "gives

---

[3] Count One of the Complaint alleges an assault by John Doe, and a conspiracy among the remaining Defendants, including the police, in furtherance of that assault. Count Two alleges battery by John Doe, and again asserts a coordinated effort by all of the Defendants. Count Three alleges false imprisonment to the extent that John Doe restricted Mr. Pietrangelo's movements on the sidewalk. Count Fourteen alleges intentional infliction of emotional distress, without specific reference to John Doe's actions. Count Fifteen claims common-law conspiracy.

a third person a right to protection." *Peck*, 146 Vt. at 65, 499 A.2d at 425 (citations omitted).

In *Lussier v. Bessette*, 2010 VT 104, ¶6, the Vermont Supreme Court limited the circumstances in which third party "concerted action liability" may be imposed as follows:

> A person is subject to liability for harm resulting to a third person from the tortious conduct of another if the person: (1) commits a tortious act as part of a common design with another; (2) gives substantial assistance to the other knowing that the other's conduct is a breach of duty; or (3) gives substantial assistance to the other to accomplish a tortious result while also acting in a manner that is a breach of duty to the third person.

*Id.* (citing *Montgomery v. Devoid*, 2006 VT 127, ¶ 33, 181 Vt. 154, 915 A.2d 270 (citing Restatement (Second) of Torts § 876 (1979)).

The affidavits submitted by George, Christine, and Evan Alvanos refute the existence of a special relationship or concerted action. Each of these Defendants avers that they have reviewed the DVD, and that aside from hearing John Doe referred to as "John" on the video, they have no knowledge of John Doe's identity. Moreover, as discussed above, they each swear that they did not direct, or even encourage, John Doe to act as he did. (Docs. 146-5, 146-6 and 146-7.)

Rather than point to *evidence* that disputes the Alvas Defendants' sworn statements, Mr. Pietrangelo relies on conjecture to urge the court to find the Alvas Defendants' statements not credible. *See Beatie v. City of New York*, 123 F.3d 707, 710-11 (2d Cir. 1997) ("[A] trial court's function is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather to determine whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in the non-moving party's favor.") (citation omitted). To support his position, Mr. Pietrangelo cites both his own observations and episodes from the DVD. First, he claims that he saw Evan Alvanos speaking to John Doe "previous to John Doe's attack on me and in a manner indicating they were friends and/or

in a working relationship." (Doc. 150-2 at 4). He contends that "[t]his fact goes straight to complicity." (Doc. 150-1 at 5.) He does not further explain, however, how a mere friendship or a "working relationship" is sufficient as a matter of law to establish a "special relationship" that may render Evan Alvanos liable for John Doe's actions.

Second, Mr. Pietrangelo cites the portion of the DVD wherein someone calls John Doe by the name "John," and posits that this "someone is or seems to be Evan Alvanos and Christine Alvanos themselves." (*Id.*) Again, he argues that "[t]his fact goes straight to complicity." (*Id.*) However, Mr. Pietrangelo does not cite any voice identification evidence, nor does he explain how knowledge of John Doe's first name would give rise to a legal obligation to control his behavior.

Third, Mr. Pietrangelo cites the fact that Evan Alvanos told him "best you leave." He contends that "[a] jury could consider that statement both going to the hostility of the Alvas Defendants to Plaintiff and a willingness to harm Plaintiff regarding his picketing, as well as a willingness to violate the law to serve their own needs." (*Id.* at 7.) Mr. Pietrangelo also argues generally that the Alvas Defendants were motivated to order an attack in order to stop him from publicizing the fact that one of their employees had handled food in an unsanitary manner. (*Id.* at 7-8.) Among his remaining arguments is a claim that the police response, namely allowing John Doe to leave the scene and an alleged failure to protect Mr. Pietrangelo, suggests "a plan or agreement between the Alvas Defendants and the police to have John Doe attack the Plaintiff." (*Id.* at 9.) Again, wholly absent from Mr. Pietrangelo's arguments is any evidence upon which the court could find either a "special relationship" or concerted action beyond Mr. Pietrangelo's conjecture.

In summary, each of Mr. Pietrangelo's arguments involves a high degree of speculation. "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation

12

omitted); *see also McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) (speculation and surmise is not enough to defeat a well-founded motion for summary judgment); *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999) ("the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.") (internal quotation marks and citation omitted); *see also* Fed R. Civ. P. 56(e).

Moreover, none of Mr. Pietrangelo's third party liability claims against the Alvas Defendants are supported by evidence of a "special relationship" or "concerted action" that would permit liability to be imposed on that basis:

> "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Because Mr. Pietrangelo has failed to adduce essential evidence in support of his third party liability claims, they must be dismissed.

Finally, to the extent Mr. Pietrangelo asserts an intentional infliction of emotional distress claims against the Alvas Defendants based upon their own actions, he has failed to sustain the "heavy burden" of establishing a prima facie case. *See Siliski v. Allstate Ins. Co.*, 174 Vt. 200, 208, 811 A.2d 148, 154 (2002). As a matter of law, Mr. Pietrangelo identifies no conduct by the Alvas Defendants which a reasonable juror could conclude is "so outrageous as to surpass all possible bounds of decency, [to] be regarded as atrocious, and utterly intolerable in a civilized community." *Gallipo v. City of*

*Rutland*, 163 Vt. 83, 94, 656 A.2d 635, 643 (1994).

## Conclusion

For the reasons set forth above, the Alvas Defendants' motion for summary judgment is GRANTED, and all remaining claims in this case are DISMISSED. Any claims being brought against Defendant John Doe are DISMISSED without prejudice. The Alvas Defendants' motion for an extension of the current Discovery Schedule is DENIED as moot.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 13th day of December, 2010.

Christina Reiss
United States District Court Judge